HOYLE v. WHITESIDE *et al.*

*Will, construction of — exception in devise.*

A testator devised to his wife the use for life of a house and one-third of the rest of his real estate, except seven village lots, which were specifically devised to sundry persons. By the ninth clause of his will he gave to B for life one-twelfth of "the remainder of my real estate devised as aforesaid to my wife," and also for life "one-eighteenth of all my real estate, excepting the village lots and *the real estate devised as aforesaid, to my wife, for her life.*" By the tenth clause he gave to H one-half the remainder, etc., devised to his wife for life, and also "*one-third of all* my real estate, excepting the village lots, and *the real estate devised to my wife for life as aforesaid.*" By the eleventh clause he gave to R and others the "*other* one-half" of the remainder, etc., and also the "*other* one-third of all my real estate," with the same exception. The devises to R were subject to the devises to B.

*Held* (P. POTTER, J., *contra*), that the exception of "the real estate devised to my wife for life as aforesaid" was an exception of the lands in which that estate

was given, and not of the life estate merely. B, H and R took their respective proportions, one-twelfth, one-third, etc., not of the testator's whole estate, but of what remained after excluding the part in which the widow had a life interest, leaving a residue undistributed by the will, which descended to the heirs of testator.

THIS is a submission under section 372, Code of Procedure, to obtain an interpretation of certain portions of a will.

Pliny Moore, late of Champlain, Clinton county, died on the 9th day of March, 1872, leaving a will of real and personal estate, dated October 2, 1865, which was duly admitted to probate and letters testamentary issued to the executors therein named.

The first clause of the will reads thus: I. "I give, bequeath and devise to my beloved wife Parmelia, my dwelling-house and premises situate in Champlain aforesaid, where I now reside, together with all the furniture belonging to said house, to use and enjoy during life. Also I give and devise to my said wife the use for life of an equal undivided one-third of all the rest of my real estate, excepting the seven village lots or pieces of land hereinafter expressly devised. Also I give and bequeath to my said wife an annual income or legacy of $500 during life, making the same a charge or lien upon all my real estate excepting the seven village lots or pieces of land hereinafter expressly devised, not hereinabove devised, in case there is not sufficient personal estate legally applicable to the payment of the same."

By clauses II to VIII, seven village lots in Champlain are given to various persons. The remaining clauses of the will are as follows:

"IX. I give and devise to my sister, Mrs. Brinkerhoff, the use for life of an equal undivided one-twelfth part of the remainder of my real estate devised as aforesaid, to my beloved wife. Also the use for life of an equal undivided one-eighteenth part of all my real estate excepting the village lots or pieces of land devised as above *and the real estate devised as aforesaid, to my wife for her life.*"

"X. I give and devise to my niece Helen, daughter of brother Royal, an equal undivided one-half part of the remainder of the real estate devised for life as aforesaid, to my wife. Also an equal undivided one-third part of all my real estate, excepting the village lots devised as above, *and the real estate devised for life to my wife as aforesaid.*"

Hoylé v. Whiteside.

" XI. I give and devise to my brother Royal, and to the heirs of my beloved brothers and sisters, Noadiah, Amasa, Mrs. Hubbell and Mrs. Whiteside, the other equal undivided one-half part of the remainder of the real estate devised for life as aforesaid, to my wife, subject, however, to the life estate of my sister Mrs. Brinkerhoff, in an undivided one-twelfth part thereof as aforesaid. Also the other equal undivided one-third part of all my real estate, excepting the village lots devised as above, *and the real estate devised for life to my wife as aforesaid,* subject, however, to the life estate of my sister Mrs. Brinkerhoff, in an undivided one-eighteenth part thereof as aforesaid. The devises in this eleventh item are to be divided as follows: An equal undivided one-fifth part thereof to my brother Royal, or in case of his death, to the heirs of his body, share and share alike. An equal undivided one-fifth part thereof to the children of my deceased brother Noadiah, or to their descendants, if any be deceased, share and share alike. An equal undivided one-fifth part thereof to the children of my deceased brother Amasa, or to their descendants, if any be deceased, share and share alike. An equal undivided one-fifth part thereof to the children of my deceased sister Mrs. Hubbell, or to their descendants, if any be deceased, share and share alike, and the remaining equal undivided one-fifth part thereof to the children of my deceased sister Mrs. Whiteside, or to their descendants, if any such children be deceased, share and share alike. The children of a deceased parent taking, if any there be, only the portion of the parent, if alive, share and share alike."

" XII. I give and devise to Charles E. Everest, Esq., of Champlain, all village lots and premises wherever situated, contracted to be sold at the time of my decease, in trust, with power to deed the same upon payment of the purchase-moneys to the purchasers, or their assigns respectively, with power also to forfeit the said contracts for non-payment of purchase-money, and to resell the said land, accounting to my executors for the moneys."

XIII. And, lastly, I hereby appoint my much esteemed friends Timothy Hoyle, John H. Whiteside, of Champlain, executors of this, my last will and testament, hereby revoking all former wills by me made."

*Matthew Hale* and *Peter S. Palmer,* for plaintiff, cited 3 Kent's Com. 487; 1 R. S. 754, § 27; 2 Pow. on Div. (by Jarman) 5–11; *Harvey* v. *Harvey,* 32 Beav. 441; *Walsh* v. *Peterson,* 3 Atk. 193.

3 Greenl. Cruise, 169, § 2, 244, § 118, 273, § 58; *Cooke* v. *Gerrard*, 1 Lev. 212; *Rooke* v. *Rooke*, 2 Vern. 461; *Willows* v. *Lydcott*, 2 Vent. 285; S. C., 3 Mod. 229; *Chester* v. *Chester*, 3 Peere Will. 56; 1 Jarm. on Wills, 427; *Earl* v. *Grim*, 1 Johns. Ch. 494, 498; *Smith* v. *Coffin*, 2 H. Bl. 444, 450; *Frogmorton* v. *Holyday*, 3 Burr. 1618, 1623; *Hogan* v. *Jackson*, Cowp. 299, 306; *Grayson* v. *Atkinson*, 1 Wils. 333; 2 Redf. on Wills, 442; *Lewis* v. *Smith*, 9 N. Y. 510; *Bogert* v. *Hertell*, 4 Hill, 492; *Smith* v. *Gage*, 41 Barb. 67; 2 Story's Eq. Juris., § 791.

*Esek Cowen*, for defendants, cited *Lynes* v. *Townsend*, 33 N. Y. 558; *Jackson* v. *Sill*, 11 Johns. 216; *Jackson* v. *Merrill*, 6 id. 191; *Vanderzee* v. *Vanderzee*, 30 Barb. 331; *Charter* v. *Otis*, 41 id. 525; *Smith* v. *Gage*, 41 id. 60.

DANIELS, J. By the first paragraph of the testator's will he devised the premises on which he resided to his wife for life. And in addition to that he devised her a life estate in an equal undivided third of all the rest of his real estate, excepting seven village lots. These seven village lots were then specifically devised to seven different persons. The devises to his wife and of the seven village lots were made in terms so clear as to leave no room for controversy or misunderstanding as to what his intention was in those respects. After the death of his wife the testator also devised to Mrs. Brinkerhoff an estate for life in one-twelfth part of the remainder of his real estate which he had devised for life to his wife. Then he devised the remainder of the real estate in which the life estate for his wife and Mrs. Brinkerhoff were created in two equal undivided parts — one-half to his niece Helen, the plaintiff, and the other undivided half, subject to the life estate of one-twelfth to Mrs. Brinkerhoff, to his brother Royal, and the heirs of two deceased brothers and two deceased sisters. Those devises effectually disposed of the entire fee of the premises on which he resided, and the undivided third of all the rest of the testator's real estate, except the village lots. There can be no difficulty in the case as to those parts of the testator's property.

The contest relates to the other two undivided thirds. The plaintiff, claiming an undivided half of it, in addition to the share of one-half devised to her in the third given to the testator's wife for life; while on the part of the testator's heirs at law it is claimed that a

smaller interest in the other two-thirds was devised to her. The uncertainty is created in the case chiefly by an exception, repeated on three different occasions, for the purpose of explaining or qualifying the extent of the devises designed to be made by the testator out of that part of his real estate not affected by the life estate given to his wife. These exceptions are contained in the ninth, tenth and eleventh paragraphs of the will. And with the exception of the description of the interests devised they are the same, and used in connection with the same general terms of reference to his estate in each paragraph. From that circumstance it is reasonably to be inferred that the testator designed and expected to accomplish the same substantial result by means of the exception mentioned by him in each instance where he used it. The object of the exception was to exclude from the terms *all his real estate,* the village lots already mentioned and the real estate devised for life to his wife, for the purpose of designating that from which the fractional devises were made by him. No difference of opinion can exist as to the effect of the exceptions so far as they relate to the village lots. The confusion arises out of the other portion of the exceptions. The three devises qualified by this exception are made in nearly the same terms, except that the interest devised to Mrs. Brinkerhoff for her life in the residue not affected by the wife's life estate, is less than that given to the plaintiff, and also less than that given to the testator's brother, and the heirs of his deceased brothers and sisters. With that exception and the additional one designating the third given his brothers and the heirs of his deceased brothers and sisters as the other third, the devises are expressed in the same words. So that what appears to have been his intention in making use of the exception in one instance, as a qualification of one devise, would furnish a safe guide in determining what his intention was in the other two instances where he made use of it. The exception being in the same form throughout, must at each time have been used for the same purpose. The terms are clear, apposite and intelligent, and must have been selected on account of their adaptability to the expression of his purpose. And the presumption is that he used them in their ordinary and popular sense, inasmuch as there is nothing in the context disclosing the existence of a different intention. The first devise in which the exception is used is that in which a life estate if given to Mrs. Brinkerhoff, out of the portion of his property not devised to his wife for life. The terms used are

as follows: "Also the use for life of an equal undivided one-eighteenth part of all my real estate excepting the village lots or pieces of land devised as above, and the real estate devised as aforesaid, to my wife for life." In this instance there can be no doubt but that the exception was intended to exclude from the terms "all my real estate," that part of the testator's property in which he had given his wife a life estate. The exception is not of her life estate, but of the real estate in which the life estate was given. That the exception should have just that effect is apparent from the further fact that the whole of the property in which his wife had a life estate was in the end devised in fee simple to his niece Helen, his brother Royal, and the heirs of his deceased brothers and sisters. As to the life estate mentioned in this devise, it was one-eighteenth of all the testator's real estate after excluding the village lots and the third of the rest devised to his wife for life.

The effect of the exception is equally as obvious upon the devises secondly made in the tenth and eleventh paragraphs of the will. By the tenth paragraph the remainder of half the testator's real estate, in which he devised his wife a life estate, was devised to his niece Helen; and then he made the devise in controversy in her favor. The terms by which that was made are as follows: "Also an equal undivided one-third part of all my real estate, excepting the village lots devised as above, and the real estate devised for life to my wife as aforesaid." The same reasons are applicable here to the construction of the exception as existed in the case of Mrs. Brinkerhoff; for the same terms are used to express the exception, though not precisely in the same order. In this instance it is the real estate devised to the testator's wife that is excepted, not the life estate in that real estate. And as he had before devised one-half the remainder in that real estate to the devisee named in this paragraph, and immediately afterward devised the other half to his brother and the heirs of his deceased brothers and sisters, it is plain he could have had no other intention or design. The office of the exception is to exclude from the real estate, to be disposed of by force of the devise, that part of the real estate in which the testator had given his wife a life estate. Then, after excluding that, he devised an undivided third part of all his real estate to his niece Helen. The necessary effect of the devise was to give her an undivided one-third of all his real estate not within the exception. For the exception excluded the other third as effectually as though it

had not been devised by the testator. As to the real estate mentioned in the exception the devise was by its terms to have no effect. Consequently his niece Helen could only take by force of this devise one-third of the testator's real estate not included in the exception of the one-third, which would be one-third of two-thirds of the real estate he owned, besides the village lots. This is the clear effect of the language made use of by him; and the general scope and tenor of the will shows that he used the language selected by him understandingly.

By the devise of a similar interest in the next paragraph, also effected by the repetition of the same exception, it is mentioned as the "other equal undivided part of all my real estate." This phrase does, standing by itself, indicate the existence of a supposition in the mind of the testator that he had, by the preceding devise in favor of his niece Helen, given her a third of all his real estate, except the village lots; and it might be controlling in that respect if it had been followed by a devise of an undivided third of all the real estate but the village lots. But it was not, for he immediately proceeded to give to the devisees referred to in the eleventh paragraph precisely such a proportion of his property as he had just before declared it to be his purpose to devise to his niece Helen. He did not devise to them a third of his real estate except the village lots, but a third, after excepting those lots and the real estate devised for life to his wife. So that, when he came to describe by the direct devise, what he termed the other third of all his real estate, it was but one-third of two-thirds, as he described the interest devised to Helen. The preceding devise, for that reason, derives no assistance whatever from the use which the testator made of the terms or phrase alluded to.

In both these paragraphs the interest devised is precisely alike. It is an undivided third of all the testator's real estate, except the village lots, and nothing but that. His language in these respects is clear and unambiguous, and it is the duty of the court to adopt and accept it as he made use of it. No different course can be pursued without in effect expunging from the will the exception made by the testator of the portion of his real estate devised for life to his wife. And that cannot be done without making a different will for him, than the one he subscribed and declared to be his will. If he had used the exception but once, there would be more reason perhaps for disregarding it. But as he used it on the three distinct

occasions as a plain qualification of the devises made by him, it is apparent it was done with intelligence and deliberation. It will not do to disregard it because it can be seen that the will would have been more complete without it. For the testator had a right to use it, and he must have done so for the purpose of limiting the extent the devise would have reached without it. It can have but one effect, and that is to reduce the undivided third of his real estate given under its qualification, and restraint to an undivided third of two-thirds of his real estate left after excluding the village lots, and the third in which his wife was provided with her life estate. The disposition finally made of that third, as well as the language used to express the exception, leads to that result. And the rights of the heir at law, who is not to be disinherited by loose implication, require the conclusion to be adopted. *Areson* v. *Areson*, 3 Denio, 458, 461; *Lynes* v. *Townsend*, 33 N. Y. 558, 561, 562; *Scott* v. *Guernsey*, 48 id. 106.

A further confirmation of the conclusion mentioned is found in the circumstance that the testator has nowhere declared that he intended or designed to dispose of all his property by means of the provisions contained in his will. And he omitted entirely to make any gift or devise of any residue that might remain after satisfying the bequests and devises particularly enumerated in the will. It did affirmatively appear that the possibility was contemplated that he might die intestate as to a portion of his property. For he made no disposition of the household furniture given to his wife for life after her death, nor of the residue of the personal estate which might remain after the payment of the annuity to his wife, which was charged upon it by the first paragraph in the will.

The exceptions made by the testator should be sustained in the terms he has employed to express them. And that will result in the construction that, in addition to her life estate in one-twelfth of the portion of the real estate given to the testator's wife for life, Mrs. Brinkerhoff was also devised an eighteenth of all the testator's real estate, except the village lots and the real estate devised to his widow for life. And by the devise of the undivided third to the testator's brother Royal, and the heirs of his deceased brothers and sisters, that life estate of an eighteenth was included in that undivided third. Subject to that the testator's brother Royal and the heirs of his deceased brothers and sisters are devised an undivided third of two-thirds of all the testator's real estate except the village

lots, and also the undivided half of the remainder of the real estate given by the testator to his wife for life, subject to the life estate of Mrs. Brinkerhoff in an undivided twelfth of that half for her life. The devise to the testator's niece Helen, the plaintiff, includes an undivided half of the remainder of the real estate devised to his wife for life, and an equal undivided third of two-thirds of all his other real estate except the village lots. And that will leave an undivided third of two-thirds of his real estate, except the village lots, undevised, to pass by descent to his heirs at law.

The lots contracted to be sold have not been referred to, because they are directly and effectually disposed of by a subsequent clause of the will, having no effect upon the portions required to be considered in the disposition of the substantial portion of the present controversy. That provision is undoubtedly valid, and provides for the disposition of the proceeds as part of the testator's personal estate. And as such they would be chargeable with the payment of the annuity given to the testator's wife. But what may remain beyond that he has failed to provide for its disposition. The excess, if there should be any, would undoubtedly be payable to the testator's next of kin in the ordinary course of administration.

Judgment should be directed in conformity to the construction given to the will, and so far as that may prove to be necessary, declaring the interests of each of the persons affected, as that construction will establish them. The judgment to be settled by one of the justices hearing and deciding the cause. The costs of the parties should be paid out of the funds the executors may have, which may be applicable to that purpose.

MILLER, P. J., concurred.

P. POTTER, J., dissented.

*Ordered accordingly*